IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02040-PAB-TPO

FIRE LOSS RESPONSE, LLC,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

     Defendant.

---

### ORDER

---

     The matter before the Court is Defendant's Motion for Summary Judgment [Docket No. 42].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.    PROCEDURAL HISTORY**

     On August 10, 2023, plaintiff Fire Loss Response, LLC ("Fire Loss") filed suit in this case.  Docket No. 1.  On September 18, 2023, Fire Loss amended its complaint. Docket No. 8.  In the amended complaint, Fire Loss brings two claims: breach of contract and statutory bad faith breach of an insurance contract under Colo. Rev. Stat. § 10-3-1115.  *Id.* at 3-4, ¶¶ 19-32.  As part of the breach of contract claim, Fire Loss alleges that defendant American Family Mutual Insurance Company ("American Family") has "breached the Policy by failing to acknowledge the entire scope of necessary repairs and the amount of the Loss as it relates to the damage to the Insured's Property" and has "breached the Policy by failing to make proper payments to Plaintiff pursuant to the terms of the Policy."  *Id.* at 3, ¶ 22.  In the statutory bad faith claim, Fire Loss alleges that American Family has "delayed Plaintiff's Claim without a

reasonable basis within the meaning of C.R.S. §10-3-1115," has "failed to sufficiently prepare, educate, and oversee the actions of its adjusters and estimators," and has "failed to reasonably adjust the Loss and make proper payments in good faith." *Id.* at 4, ¶¶ 28, 30-31.

On October 15, 2024, American Family filed a motion for summary judgment on Fire Loss's claims.[1]  Docket No. 42.  On November 8, 2024, Fire Loss responded, Docket No. 51, and American Family replied on November 25, 2024.  Docket No. 60.

## II.   UNDISPUTED FACTS[2]

Mary Perea-Martinez purchased a homeowner's insurance policy from American Family for her property on Fitzsimons Way in Aurora, Colorado.  Docket No. 42 at 4, ¶¶ 1-2.  The property was damaged in a fire that occurred on March 23, 2021 while Ms. Perea-Martinez's insurance policy was in effect.  *Id.*  Ms. Perea-Martinez reported the fire to American Family that same day, and claim number 01003227475 was opened. *Id.*, ¶ 3.  The dwelling limit of the insurance policy at the time of the fire was $207,800 and the personal property limit was $155,900.[3]  *Id.*, ¶ 4.  The policy's "How We Settle

---

[1] On October 1, 2024, American Family filed two motions to strike expert opinions pursuant to Federal Rule of Evidence 702.  Docket Nos. 40, 41.  In one motion, American Family seeks to strike certain opinions of Richard Glavich regarding whether American Family's handling of Ms. Perea-Martinez's claim was consistent with industry standards.  *See* Docket No. 41.  In the second motion, American Family seeks to exclude opinions by Mr. Acker regarding the necessity of the repairs made by Fire Loss.  Docket No. 40.  None of Fire Loss's denials of fact or assertions of fact depend on opinions by Mr. Glavich.  *See* Docket No. 51.  Although both parties rely on Mr. Acker's deposition testimony, neither party relies on Mr. Acker's opinions regarding the necessity of the repairs performed by Fire Loss.  *See* Docket Nos. 42, 51.  Because the opinions American Family seeks to exclude are not relevant to American Family's motion for summary judgment, the Court finds that it is unnecessary to resolve the motions to exclude before ruling on the motion for summary judgment.

[2] The following facts are undisputed unless indicated otherwise.

[3] In response to American Family's assertion of undisputed fact, Fire Loss states that American Family "refers to a document which speaks for itself.  To the extent that

Losses" section outlines how insurance claims are adjusted and settled for dwelling and personal property. *Id.*, ¶ 5. The policy requires receipts to be provided for completed repairs and limits the amount paid to the amount incurred.[4] *Id.* The policy's "Duties After a Loss" section requires the insured to allow inspection of the damaged property before permanent repairs are made and provide documents requested for copying.[5] *Id.*,

---

this allegation states anything that differs from the clear reading of the document, [Fire Loss] denies this allegation. In addition, there are additional coverages under the Policy if the damage goes beyond the Policy limits, debris removal, and code and ordinance." Docket No. 51 at 3, ¶ 4 (citations omitted). Fire Loss cites several provisions of the policy that allow an increase in the policy limit under certain circumstances. *See, e.g.*, Docket No. 51-1 at 11 ("If the amount you spent to repair or replace covered damage to your dwelling exceeds the Coverage A limit in this policy: a. We will pay up to 20% more than the Coverage A limit shown in the Declarations, subject to the following: . . . You must complete the repair or replacement of your dwelling at its current location within 12 months of the date of the loss." (emphasis omitted)). Although Fire Loss maintains that the dwelling coverages may be increased, Docket No. 51 at 3, ¶ 4, American Family accurately states the policy limits identified in Ms. Perea-Martinez's insurance policy. Docket No. 42-1 at 1. This fact is therefore deemed to be admitted.

[4] Fire Loss again states that, to the extent that American Family's "allegation states anything that differs from the clear reading of the document, [Fire Loss] denies this allegation." Docket No. 51 at 3, ¶ 5. Fire Loss repeats this denial throughout its response. *Id.* at 4, ¶¶ 7, 9-10. These responses are ineffective as a denial of American Family's assertions of fact because they do not identify any inaccuracies in American Family's undisputed facts. Therefore, these facts are deemed to be admitted. Fire Loss also "contends that compliance with the Policy has occurred prior to filing litigation and also through discovery in litigation on November 15, 2023, and August 27, 2024. The specific invoices and receipts relevant to comply with the Policy are Bates numbered and properly named as invoices." *Id.* at 3, ¶ 5 (citations omitted). To the extent that Fire Loss is attempting to establish undisputed facts regarding its discovery responses, these assertions should have been included in its statement of undisputed facts, as American Family has no obligation to admit or deny facts contained in Fire Loss's responses to American Family's undisputed facts. *See* Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vi. To the extent that Fire Loss is attempting to present legal arguments regarding the impact of its discovery responses on Ms. Perea-Martinez's claim, such arguments are improper in responses to assertions of fact. *Id.*, § III.F.3.b.vii ("The sole purpose of these procedures is to establish facts and determine which of them are in dispute. Legal argument is not permitted here and should be reserved for separate portions of the briefs." (emphasis omitted)).

[5] Fire Loss responds that it "lacks the information and knowledge to know if the insured complied with the Policy before it was hired. However, [Fire Loss] discussed

¶ 6.  The policy states that the loss "will be payable 60 days after we receive your properly completed proof of loss and (1) we reach agreement with you . . . ."  *Id.* at 5, ¶ 7.

Fire Loss obtained a signed emergency services authorization from Ms. Perea-Martinez.  *Id.* at 6, ¶ 13.  American Family performed a preliminary inspection of the property with Chris Acker[6] of Fire Loss to identify damages and create an initial scope of repairs.  *Id.* at 5, ¶ 11.  During this initial inspection, American Family noted that the final scope of repairs would be confirmed after the abatement was complete.  *Id.* Following the inspection, American Family estimated the covered repair costs and issued the actual cash value payment.  *Id.* at 5-6, ¶ 12.  Fire Loss did not create its own estimates and worked off American Family's bids and Xactimate estimates.[7]  *Id.* at 6, ¶ 13.

American Family explained to Fire Loss what was needed to approve mitigation costs and ordered two competitive bids.  *Id.*, ¶ 14.  American Family told Fire Loss that an agreed-upon repair scope and schedule were required.  *Id.*, ¶ 16.  Instead of

_____

the repairs needed at the Property with [American Family] and cooperated by sending documents to the adjuster when necessary."  Docket No. 51 at 3-4, ¶ 6.  First, Fire Loss's comment is unresponsive to American Family's assertion of fact regarding the policy's terms.  Second, Fire Loss's lack of personal knowledge is insufficient to create a dispute of material fact at summary judgment.  Third, American Family accurately describes the policy's provisions, which state that "[y]ou, any insured, and any person or entity claiming coverage under this policy must: as often as we require: . . . show us the damaged property before permanent repair or replacement is made."  Docket No. 42-1 at 13, § 1, ¶ 5.j.1.  Therefore, this fact is deemed to be undisputed.

[6] Mr. Acker was Fire Loss's representative for its Rule 30(b)(6) deposition.  *See* Docket No. 42-2.  The parties do not explain Mr. Acker's role at Fire Loss.  In its motion to exclude Mr. Acker's testimony, American Family identifies Mr. Acker as Fire Loss's "Colorado Reginal [sic] Manager."  Docket No. 40 at 1.

[7] Xactimate is a company that offers tools for estimating claims for property repair.  *See Xactimate*, https://xactimate.com/home/ (last visited September 8, 2025).

preparing its own estimate and negotiating an agreed-upon scope, Fire Loss decided to
submit missing items and incurred costs for approval by American Family.[8]  *Id.* at 6-7,
¶ 17.

American Family requested additional information regarding supplements
submitted by Fire Loss when disputes arose.  *Id.* at 6, ¶ 16.  American Family was not
provided the labor documentation it requested from Fire Loss, despite Fire Loss
admitting that timecard information existed.[9]  *Id.* at 7, ¶ 18.  Specifically, after reviewing
the engineering information submitted, American Family requested documents to
substantiate Fire Loss's supplemental scope, including an additional 240 hours of labor.
*Id.*, ¶ 22.  American Family did not receive the requested documentation.[10]  *Id.*

---

[8] Fire Loss admits this fact "to the extent that [Fire Loss] representative, Chris
Acker, indicated that he thinks the intent was to not continue arguing about the
situation."  Docket No. 51 at 5, ¶ 17.  Fire Loss does not deny that it chose to submit
repair costs it had already incurred to American Family for approval rather than to agree
to a scope of repairs.  Moreover, Fire Loss cites no evidence in support of its denial.
This fact is therefore deemed to be admitted.

[9] Fire Loss denies this fact.  Docket No. 51 at 5, ¶ 18.  Fire Loss relies on a
portion of Mr. Acker's deposition testimony in which Mr. Acker says that he sent the
public adjustor "all the documents" and that he remembers the public adjustor telling
him "verbally that [the public adjustor] had forwarded everything to AM Fam."  Docket
No. 51-2 at 3, 122:2-21.  Mr. Acker's testimony is insufficient to create a dispute of fact
as to whether Fire Loss provided the labor documentation that American Family
requested.  The deposition provides no details as to what documents Mr. Acker is
discussing or whether the labor documentation that American Family requested was
part of these documents.  Moreover, Mr. Acker's testimony lacks any context for when
the public adjustor allegedly sent American Family the documentation.  For example,
the testimony does not specify whether the materials were sent to American Family
before or after American Family requested additional documentation.  Finally, the
testimony relies on hearsay because Mr. Acker does not claim that he sent American
Family the requested documentation and he does not have personal knowledge of the
fact that the public adjustor sent American Family the requested labor documentation.
Therefore, Fire Loss does not support its denial, and the Court deems this fact to be
admitted.

[10] Fire Loss denies this fact.  Docket No. 51 at 5, ¶ 22.  Fire Loss cites a portion
of Mr. Acker's deposition testimony reviewing correspondence between him and

American Family hired the HVAC expert who installed Ms. Perea-Martinez's HVAC system, Diversified Mechanical Services. *Id.*, ¶ 19. Diversified Mechanical Services determined that the HVAC system could be repaired and that Fire Loss's scope of work was unnecessary. *Id.*

American Family advised Fire Loss in writing on September 22, 2021 that a second inspection was required before any additional repairs would be approved. *Id.* at 7, ¶ 20. When the property was reinspected, unapproved permanent repairs had already been completed and could not be inspected.[11] *Id.*, ¶ 21.

---

American Family. *Id.* (citing Docket No. 42-2 at 93, 202:15-23). Mr. Acker testified that, in a September 29, 2021 email, he stated that "all of that information was sent to you weeks ago?" *Id.*, 202:21-23. However, Mr. Acker's testimony does not support the assertion that the information requested by American Family was provided. Mr. Acker testified to the following sequence of events. On August 24, 2021, Mr. Acker sent an email with engineering drawings dated August 11, 2021 to support a framing estimate of $28,691. *Id.* at 93-94, 202:24-203:23. On September 16, 2021, Mr. Acker sent another email in which he stated that the "scope of repair went up significantly." *Id.* at 96, 205:8-9. Specifically, the framing estimate increased to $61,000, which included $29,275 for 240 hours of labor. *Id.* at 96-97, 205:20-206:1. Mr. Acker testified that, as part of the supplement, he again included the engineering documents dated August 11, 2021. *Id.* at 96, 205:17-18. Mr. Acker acknowledged that, even after receiving the August 11, 2021 engineering drawings, American Family was requesting additional documentation to support the supplemental claim for 240 hours of labor for the framing. *Id.* at 97, 206:2-11. However, Mr. Acker did not testify that he provided American Family with the requested documentation before American Family approved the revised scope of work. Instead, he testified that American Family inspected the property on October 11, 2021, after Fire Loss had completed the framing work. *Id.* at 96-105, 206:2-217:19. Therefore, Mr. Acker's testimony does not support Fire Loss's denial of the fact that American Family did not receive the requested documentation to support the supplement of 240 hours of labor, and the Court deems this fact to be admitted.

[11] Fire Loss denies this fact. Docket No. 51 at 5, ¶ 21. It claims that the "totality of the Property was inspected at the initial inspection. Therefore, the areas where repairs were done did have the opportunity to be inspected." *Id.* Fire Loss cites to claim file notes made after the initial inspection by American Family. Docket No. 51-4. The fact that there was an initial inspection provides no support for Fire Loss's denial of the fact that Fire Loss made repairs after it was told that another inspection was required. Therefore, this fact is deemed to be admitted.

Ms. Perea-Martinez retained a public adjuster in January 2022.  *Id.* at 8, ¶ 27.

American Family explained to the public adjuster that Fire Loss's estimates and

supplements were not in line with the approved scope of repairs, and documented that

the public adjustor agreed with American Family.[12]  *Id.*, ¶ 28.[13]  American Family paid

$146,920.95 in dwelling actual cash value, including $37,662.81 in recoverable

depreciation before Fire Loss filed suit.  *Id.*, ¶ 24.  American Family did not pay the

policy limits for Ms. Perea-Martinez's claim, despite the fact that Fire Loss submitted

---

[12] Fire Loss admits this fact, but states that it "does not know, for sure, that this conversation occurred or the content of the public adjuster's statements."  Docket No. 51 at 5-6, ¶ 28.  Fire Loss's lack of personal knowledge regarding the public adjustor's agreement with American Family does not create a dispute of material fact.

[13] American Family asserts that the "public adjuster resolved the disputes and recoverable depreciation in January 2022, but did not tell" Fire Loss.  Docket No. 42 at 9, ¶ 29.  Fire Loss denies this fact.  Docket No. 51 at 6, ¶ 29.  American Family does not explain or define which "disputes" were resolved by the public adjuster.  Docket No. 42 at 9, ¶ 29.  To support its assertion of fact, American Family cites a series of claim notes indicating that Ms. Perea-Martinez was continuing to work with the public adjustor.  *See* Docket Nos. 42-19, 42-20, 42-22, 42-26.  American Family also provides documents indicating that some payments were made on Ms. Perea-Martinez's claim.  Docket No. 42-13.  Lastly, American Family cites the deposition testimony of Jeremy Ritchie, who was designated for American Family's Rule 30(b)(6) deposition.  Docket No. 42-4.  American Family does not explain Mr. Ritchie's role at American Family.  *Id.*  Mr. Ritchie testified that, because Fire Loss had refused to move forward with repairs until further payments were received, American Family agreed to "release the deferred replacement cost," which is typically not released until the general contractor finishes the property repairs.  *Id.* at 67-69, 116:1-118:16.  None of these documents identify what disputes were resolved by the public adjustor.  For example, American Family provides no evidence that Ms. Perea-Martinez entered into a settlement agreement with American Family or that she released any legal claims against American Family.  Fire Loss argues that, if "the public adjuster had resolved the disputes, the current action would not exist.  To the extent that the public adjuster was having conversations without discussing the matter with [Fire Loss], [Fire Loss] admits that portion of the allegations.  However, the disputes were not resolved."  Docket No. 51 at 6, ¶ 29.  Because American Family's assertion lacks the details necessary to define what American Family is asserting as a fact, the assertion is insufficient to support a finding of undisputed fact.  Therefore, the Court finds that it is disputed whether the public adjustor resolved all of Ms. Perea-Martinez's disputes against American Family.

invoices for work that exceeded the policy limits.[14]  Docket No. 51 at 6, ¶¶ 1-2.

American Family has not paid Fire Loss for all the work that Fire Loss completed at the

property.[15]  *Id.*, ¶ 5.[16]

       Ms. Perea-Martinez signed two assignments of rights to Fire Loss, one on March

26, 2021 and another on February 28, 2022.[17]  Docket No. 42 at 5, ¶ 8.  On March 31,

2021, American Family sent a reservation of rights letter for the March 2021

assignment.[18]  *Id.*, ¶ 9.

---

     [14] American Family denies that "the scope of work was reasonable or the costs to
perform it were competitive or incurred."  Docket No. 60 at 2-3, ¶ 2.  American Family
does not deny the value of the invoices submitted by Fire Loss.  *Id.*  This fact is
therefore deemed to be admitted.

     [15] American Family denies this fact on the basis that Fire Loss "has no
admissible evidence that amounts in the two-page invoice were reasonable, covered,
incurred by the insured, and/or owed."  Docket No. 60 at 3, ¶ 5.  Fire Loss cites an
invoice showing an "Invoice Amount" of $434,711.03 and an "Amount Paid" of
$149,328.95.  Docket No. 51-7 at 1.  Fire Loss's assertion of fact does not claim that its
invoices were reasonable.  American Family does not deny that Fire Loss has invoiced
$434,711.03 for work Fire Loss completed on the property or that American Family has
only paid $149,328.95 on Ms. Perea-Martinez's claim.  Rather, American Family's
denial improperly advances arguments that these repairs are not covered by the policy
and are unreasonable.  *See* Practice Standards, (Civil Cases), Chief Judge Philip A.
Brimmer, § III.F.3.b.vii ("Legal argument is not permitted here and should be reserved
for separate portions of the briefs." (emphasis omitted)).  Therefore, this fact is deemed
to be admitted.

     [16] Fire Loss includes several assertions of fact in its statement of additional
undisputed facts that are not supported by evidence.  Docket No. 51 at 6, ¶¶ 3-4, 6-7.
The Court will not consider these facts.  *See* Practice Standards, (Civil Cases), Chief
Judge Philip A. Brimmer, § III.F.3.b.v ("Each separately numbered and paragraphed fact
must be accompanied by a specific reference to material in the record which establishes
the fact." (emphasis omitted)).

     [17] The second assignment is dated "THIS 2 DAY OF 28, 2022."  Docket No. 42-7
at 2.  Because there are not twenty-eight months in the year, the Court assumes that
the 28 refers to the day of the month, and the 2 refers to the month.  Therefore, the
Court construes the assignment to be dated February 28, 2022.  *See also* Docket No.
42-2 at 27, 73:3-6.

     [18] American Family asserts that Fire Loss did not produce the second
assignment until after this case was initiated.  Docket No. 42 at 5, ¶ 10.  Fire Loss
denies this fact.  Docket No. 51 at 4, ¶ 10.  Fire Loss relies on a portion of Mr. Acker's

III.    **LEGAL STANDARD**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).  By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the

---

deposition testimony in which he states that the assignment was produced to American Family as part of the insurance claims process.  Docket No. 42-2 at 27, 73: 13-21.  The Court finds that there is a dispute of fact as to when American Family received a copy of the second assignment.

allegations in the pleadings, but instead must designate "specific facts showing that

there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)

(quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a

minimum, an inference of the presence of each element essential to the case."

*Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court

must view the evidence in the light most favorable to the non-moving party.  *Id.*

## IV.    ANALYSIS

### A.  <u>Breach of Contract</u>

To avoid summary judgment, Fire Loss must establish, at a minimum, an

inference of the presence of each of the following elements of its breach of contract

claim: "(1) the existence of a contract, (2) the plaintiff's performance of the contract or

justification for nonperformance, (3) the defendant's failure to perform the contract, and

(4) the plaintiff's damages as a result of the defendant's failure to perform the contract."

*Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).

The Court's analysis of American Family's motion for summary judgment is

hampered by the ambiguity of the complaint.  The breach of contract claim alleges that

American Family "has breached the Policy by failing to acknowledge the entire scope of

necessary repairs and the amount of the Loss as it relates to the damage to the

Insured's Property."  Docket No. 8 at 3, ¶ 22.  The amended complaint further alleges

that American Family has "breached the Policy by failing to make proper payments to

Plaintiff pursuant to the terms of the Policy."  *Id.*  The complaint does not allege what

portions of Ms. Perea-Martinez's insurance claim American Family has denied, does not

allege what is included in Fire Loss's scope of repairs or why such repairs were

necessary, does not allege what policy terms American Family breached, and does not

allege what payments American Family owes to Ms. Perea-Martinez.  Therefore, it is
unclear what Fire Loss asserts as the basis for its breach of contract claim.

American Family's motion for summary judgment sheds little light on the
ambiguity.  The undisputed facts appear to suggest that Fire Loss's breach of contract
claim arises from, at a minimum, a dispute over the validity of Fire Loss's supplement
and invoices for framing work done at the property, including a dispute over the
reasonableness of Fire Loss's claim that the framing work required 240 hours of labor,
Docket No. 42 at 7, ¶ 22, and a dispute over whether to repair or replace Ms. Perea-
Martinez's HVAC system.  *Id.*, ¶ 19.  American Family argues that it is entitled to
summary judgment because (1) Fire Loss cannot sue American Family for a claim that
belongs to Ms. Perea-Martinez, (2) Fire Loss cannot show that Ms. Perea-Martinez
performed her obligations under the policy, and (3) Fire Loss cannot prove that
American Family breached the policy.  *Id.* at 9-16.  The Court will consider first
American Family's arguments regarding Fire Loss's ability to bring Ms. Perea-Martinez's
breach of contract claim.  The Court will then address American Family's arguments
regarding framing repairs and HVAC repairs.  Finally, in light of the ambiguity of the
complaint, the Court will consider whether Fire Loss's breach of contract claim includes
a claim for other damages and whether American Family is entitled to summary
judgment on the remainder of Fire Loss's claim.

### 1. Assignment

American Family argues that Fire Loss's breach of contract claim fails because
Fire Loss cannot sue American Family for a claim that belongs to Ms. Perea-Martinez.
Docket No. 42 at 9-11.  American Family appears to argue that Ms. Perea-Martinez's
assignment of rights is insufficient to give Fire Loss standing to bring her breach of

contract claim.  *Id.* at 9.  American Family acknowledges that "the right to receive
money due or to become due under an existing contract may be assigned, even though
the contract itself may not be assignable."[19]  *Id.* (quoting *Farmers Acceptance*, 178
Colo. at 294).  Colorado courts "allow assignment of post-loss claim benefits to a
contractor performing repairs, if properly assigned, finding the contractor stands in the
shoes of the insured."[20]  *Id.* (citing *Sable Cove*, 2014 WL 4398668, at *3).  American
Family argues that, although the March 26, 2021 assignment gives Fire Loss the right
"to submit invoices, make demands for payment, pursue legal actions, and otherwise
pursue claims or take action for the collection of the insurance proceeds," it does not
expressly assign the right to file a breach of contract claim.  *Id.* at 10.  American Family
provides no support for the proposition that an assignment must specifically assign the
right to bring a breach of contract claim for Fire Loss to pursue that claim.  Moreover,
American Family fails to explain why Fire Loss's breach of contract claim is beyond the
scope of Ms. Perea-Martinez's assignment of her rights to "any and all insurance

---

[19] Ms. Perea-Martinez's policy states that "[n]o interest, right or duty under this
policy or any claim arising under this policy may be assigned without [American
Family's] written consent."  Docket No. 42-1 at 20.  Nevertheless, the "great majority of
courts adhere to the rule that general stipulations in policies prohibiting assignments of
the policy, except with the consent of the insurer, apply only to assignments before loss,
and do not prevent an assignment after loss."  *Sable Cove Condominium Ass'n v.
Owners Ins. Co.*, No. 14-cv-00912-MJW, 2014 WL 4398668, *3 (D. Colo. Sept. 5, 2014)
(quoting 3 Couch on Ins. § 35:8 (3d ed. 2013); citing *Farmers Acceptance Corp. v.
DeLozier*, 178 Colo. 291, 294 (1972); *Interbank Invs., LLC v. Vail Valley Consol. Water
Dist.,* 12 P.3d 1224, 1228 (Colo. App. 2000); *Metropolitan Life Ins. Co. v. Lanigan,* 74
Colo. 386 (1924)).  Although American Family references its reservation of rights letter,
it does not argue that Fire Loss's assignment is invalid under the section of the policy
prohibiting assignments.  *See* Docket No. 42 at 9-11.
[20] Both parties assume Colorado law applies in this case.  *See* Docket No. 42 at
9; Docket No. 51 at 6.  Accordingly, the Court will apply Colorado law.  *Grynberg v.
Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments
assume that Colorado law applies, we will proceed under the same assumption.").

proceeds," including her right to "pursue legal actions" for such proceeds.  Docket No. 42-5.

Next, American Family argues that Ms. Perea-Martinez, "through her public adjuster, had reached agreement with American Family before February 2022 and had accepted payment of the recoverable depreciation before signing the second assignment."  Docket No. 42 at 10.  American Family appears to be arguing that Ms. Perea-Martinez settled her insurance claim with American Family before she assigned her breach of contract claim to Fire Loss.  As such, American Family seems to maintain that the assignment is a nullity because Ms. Perea-Martinez had no breach of contract claim to assign to Fire Loss.  As discussed above, American Family fails to identify what "disputes" were resolved by Ms. Perea-Martinez's public adjuster.  *See id.* at 9, ¶ 29. American Family produces no evidence that Ms. Perea-Martinez released American Family from a breach of contract claim for its failure to pay the full value of the repairs made by Fire Loss to the property.

American Family contends that the second assignment between Ms. Perea-Martinez and Fire Loss is ineffective because the first and second assignments are supported by the same consideration.  *Id.* at 11.  American Family maintains that, under Colorado law, modifications to a contract require new consideration.  Docket No. 42 at 11; *see also Supreme Auto Transp. v. Athena Assur. Co.*, No. 04-cv-02323-EWN-PAC, 2006 WL 894892, at *10 (D. Colo. Mar. 31, 2006) ("generally, a modification to a contract requires consideration" (quoting *Hoagland v. Celebrity Homes, Inc.*, 572 P.2d 493, 494 (Colo. App. 1977)).  Because there was no new consideration, American Family argues that the assignment is invalid.  Docket No. 42 at 11.  American Family,

however, has not shown why a second assignment was necessary.  Moreover,
American Family has failed to demonstrate that the first assignment was ineffective as a
means of assigning Ms. Perea-Martinez's breach of contract claim to Fire Loss.  Finally,
although American Family quotes the two assignments in the argument section of its
brief,[21] it includes no undisputed facts regarding the consideration supporting the
assignments.  Therefore, the Court finds that American Family has not shown that there
is a dispute of material fact as to whether Fire Loss was assigned Ms. Perea-Martinez's
breach of contract claim.  Because Fire Loss has produced executed assignments that
include the right to pursue legal claims against American Family for payment under the
policy, the Court finds that Fire Loss has the right to bring Ms. Perea-Martinez's breach
of contract claim to recover benefits allegedly owed for Fire Loss's repairs.

### 2.  Framing Repairs

American Family argues that Fire Loss has failed to show that there is a genuine
dispute of material fact as to whether Ms. Perea-Martinez performed her obligations
under the policy.  Docket No. 42 at 11-12.  American Family asserts that "the policy
expressly and unambiguously" required the policyholder to provide American Family
with "an opportunity to inspect damage before permanent repairs were made."  *Id.* at 12.
It maintains that Fire Loss "cannot establish compliance and in fact admits it performed
the permanent repairs without approval in the days before the inspection."  *Id.*  As such,

---

[21] Ms. Perea-Martinez first assigned her right to receive insurance proceeds to
Fire Loss in "consideration for the services performed" by Fire Loss.  Docket No. 42-5.
Ms. Perea-Martinez's February 2022 assignment was made "in consideration for Fire
Loss Response LLC.'s agreement to perform labor, services, supply materials, and
perform its obligations under this contract, including not requiring full payment at the
time of service."  Docket No. 42-7 at 1.

American Family contends that Fire Loss cannot establish the second element of its breach of contract claim.[22]  *Id.*

American Family's argument regarding the second inspection of the property appears to be limited to Fire Loss's claim for additional payments for framing repairs. *See id.* at 13 ("American Family advised FLR in writing, after speaking with the insured, 'we will require an onsite inspection before approving any additional repairs.'  Yet, when American Family arrived to reinspect at the scheduled time, the work included in the

---

[22] The Court notes that it is unclear whether American Family's arguments regarding Fire Loss performing permanent repairs before American Family's second inspection is an affirmative defense or a denial of the second element of the breach of contract claim.  *Compare Fid. & Deposit Co. of Maryland v. Riess Fam., LLC*, 2018 WL 2988619, at *3 (N.D. Okla. Apr. 17, 2018) ("Riess's denial that all condition precedents were satisfied is not an affirmative defense."), *with HamKim Inc. v. AmGuard Ins. Co.*, No. 20-cv-01194-DDD-MDB, 2023 WL 3085913, at *1 (D. Colo. Jan. 18, 2023) ("When the affirmative defense is the denial of a condition precedent, however, Fed. R. Civ. P. 9(c) requires that it be pled 'with particularity.'").  Whether Fire Loss's failure to comply with a condition precedent is an affirmative defense is relevant at trial because American Family bears the burden of proof for its affirmative defenses.  *Colorado Cross Disability Coal. v. Hermanson Fam. Ltd. P'ship I*, 264 F.3d 999, 1006 (10th Cir. 2001) ("Defendant bears the ultimate burden of persuasion regarding its affirmative defense."); *Vesom v. Atchison Hosp. Ass'n*, 2005 WL 8160820, at *2 (D. Kan. Sept. 28, 2005), *objections overruled*, 2006 WL 1675914 (D. Kan. June 14, 2006) ("as a matter of law, an affirmative defense is one which the defendant bears the burden of proving"); *McFadden v. Meeker Hous. Auth.*, No. 16-cv-2304-WJM-GPG, 2019 WL 13452191, at *3 (D. Colo. Apr. 15, 2019) ("an affirmative defense [is] a matter that entitles the defendant to judgment even if the plaintiff can prove all of the elements of its claim . . . [and] on which the defendant bears the burden of persuasion" (citations omitted)).  However, at summary judgment, the issue of whether the condition precedent is an affirmative defense is not material because the movant has the burden of showing the condition's validity or invalidity.  *See Ottawa Bancshares, Inc. v. Great Am. Sec. Ins. Co.*, 764 F. Supp. 3d 1079, 1084 (D. Kan. 2025) ("Where, on the other hand, the movant seeks summary judgment on its own affirmative defense—on which it will bear the burden of persuasion at trial—the defendant must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. . . .  Once the defendant makes this initial showing, the plaintiff must then demonstrate with specificity the existence of a disputed material fact.  If the plaintiff cannot meet this burden, the affirmative defense bars her claim, and the defendant is then entitled to summary judgment as a matter of law." (citation, quotations, alterations, and footnotes omitted)).

unapproved framing supplement – including the 240 labor hours American Family had advised were not supported – had been quickly completed." (internal citations omitted)). Therefore, the Court does not construe American Family's argument to be that Fire Loss's failure to comply with the inspection requirement bars Fire Loss's breach of contract claim based on repairs other than the framing repairs.

Fire Loss does not respond to American Family's argument that Ms. Perea-Martinez did not comply with the inspection requirement in her policy.[23] *See* Docket No. 51 at 6-9. Instead, it states that Fire Loss "completed work at the Property to repair physical damage that is covered under the Policy" and that American Family "knew that the repairs were completed when it visited the Property for the re-inspection." *Id.* at 9.

"Where an insurance contract contains a condition precedent, performance of that condition is a prerequisite to recovery on the policy." *Praetorian Ins. Co. v. Axia Contracting, LLC*, 488 F. Supp. 3d 1042, 1048 (D. Colo. 2020) (citing *Hurt v. N.Y. Life Ins. Co.*, 51 F.2d 936, 938 (10th Cir. 1931)). Here, Ms. Perea-Martinez's policy states that "[y]ou, any insured, and any person or entity claiming coverage under this policy must: . . . as often as we require: . . . show us the damaged property before permanent repair or replacement is made."[24] Docket No. 42-1 at 13. The inspection requirement is

---

[23] Fire Loss makes the following arguments: (1) the policy covers the fire loss to the property; (2) there is a dispute of fact regarding the cost of repairs made to the property; (3) American Family failed to include Fire Loss in discussions to resolve Ms. Perea-Martinez's claim; (4) Ms. Perea-Martinez properly assigned Fire Loss her claims against American Family; and (5) the policy does not require Ms. Perea-Martinez to pay for repairs out of pocket before she can be reimbursed by American Family. Docket No. 51 at 6-9. None of these arguments are responsive to American Family's assertion that Ms. Perea-Martinez did not perform her duties under the policy.

[24] American Family does not include this policy language in its section of undisputed facts. *See* Docket No. 42. However, Fire Loss does not contest the authenticity of the policy submitted by American Family in support of the motion for

written in unambiguous and mandatory terms. Moreover, the requirement is included as part of the insured's "Duties After A Loss" and is incorporated in the "CONDITIONS" section of the policy. *Id.* at 12-13. Finally, for all of the insured's after-loss duties identified in the policy, the policy states that "[w]e have no duty to provide coverage under this policy if you or any person or entity claiming coverage under this policy fails to perform these duties." *Id.* at 13. Therefore, the Court finds that the requirement that Ms. Perea-Martinez show American Family the damaged property as often as American Family requests "before permanent repair or replacement is made" is a condition precedent to coverage. Docket No. 42-1 at 13.[25]

The Court finds that this condition precedent is enforceable and a bar to Fire Loss's recovery for framing repairs made to the property. It is an undisputed fact that American Family notified Fire Loss on September 22, 2021 in writing that an additional inspection was required before American Family would approve Fire Loss's supplement

---

summary judgment, *see* Docket No. 51, and attaches a copy of the policy to its response that appears to be identical. *See* Docket No. 51-1.

[25] Courts in this district have considered whether certain contractual requirements imposed on an insured are conditions precedent to coverage or are contract terms the performance of which will not affect coverage under the policy. *See Praetorian*, 488 F. Supp. 3d at 1048 (a "stipulation in a contract may be a condition or promise, depending on the intention of the parties") (quoting *Charles Ilfeld Co. v. Taylor*, 397 P.2d 748 (Colo. 1964)). For example, in *Praetorian*, the court rejected the insurer's argument that the requirement to keep a fence around the property was a condition precedent to coverage. *Id.* at 1049. The court explained that nothing in the policy disclaimed coverage if the fence requirement was not met. *Id.* Moreover, the policy included several exclusions to certain kinds of liability if a fence was not present. *Id.* The court found that these policy exclusions would be unnecessary if a fence was a true condition precedent to coverage. *Id. Praetorian* is distinguishable because the language of Ms. Perea-Martinez's policy makes clear that inspections are conditions precedent to coverage.

for framing repairs, including 240 hours of labor.  Docket No. 42 at 7, ¶¶ 20, 22.[26]  It is

also undisputed that, when American Family reinspected the property, unapproved

permanent repairs had been completed.  *Id.*, ¶ 21.  The fact that American Family had

completed an initial inspection is immaterial because the policy gives American Family

the right to inspect "as often as we require," Docket No. 42-1 at 13, and Fire Loss was

given notice that further inspections were required.  Docket No. 42 at 7, ¶ 20.

Therefore, the Court finds that Fire Loss has failed to demonstrate that there is a

dispute of material fact regarding whether Ms. Perea-Martinez performed this condition

precedent to coverage.

Furthermore, the undisputed facts show that American Family was prejudiced by

Fire Loss completing repairs before American Family could reinspect the property.  By

completing the repairs before American Family could inspect the damage and confirm

the necessity and scope of repairs, Fire Loss's conduct "prejudice[d] the insurer by

putting the insurer in the untenable position of either denying coverage or paying the

claim without the means to investigate its validity."  *Walker v. State Farm Fire & Cas.*

*Co.*, No. 16-cv-00118-PAB-STV, 2017 WL 1386341, at *4 (D. Colo. Feb. 23, 2017),

*report and recommendation adopted*, 2017 WL 1386346 (D. Colo. Mar. 17, 2017).

Therefore, the Court finds that American Family has demonstrated that it is entitled to

summary judgment on the portion of Fire Loss's breach of contract claim based on

---

[26] Although American Family's assertion of fact states that "an inspection was
required before any additional repairs would be approved," Docket No. 42 at 7, ¶ 20,
American Family's evidence shows that the repairs at issue were limited to the framing
repairs.  *See*, *e.g.*, Docket No. 42-2 at 36, 94:4-18 (discussing the fact that American
Family advised Mr. Acker that American Family wanted to inspect hidden damage
before approving additional framing supplements).

American Family's denial of coverage for unapproved framing repairs.  *See Duff v. Allstate Vehicle & Prop. Ins. Co.*, No. 17-cv-01948-NYW, 2018 WL 5619322, at *6 (D. Colo. Oct. 30, 2018) ("Defendant is entitled to summary judgment because Plaintiff failed to abide by the terms of the Policy in permitting a follow-on inspection of the Residence after claiming new damages not previously reported during the April 10 inspection."); *see also Aponte v. Allstate Fire & Cas. Ins. Co.*, No. 21-cv-01601-CNS-SKC, 2023 WL 129693, at *3 (D. Colo. Jan. 9, 2023) ("The plain and unambiguous language of the policy required Plaintiff to submit a medical records authorization upon request. . . .  This clause within the contract to provide medical authorization was a condition precedent to Plaintiff's recovery under the policy. . . .  No reasonable trier of fact could conclude that Plaintiff satisfied the condition precedent to coverage. Therefore, summary judgment in favor of Defendant is appropriate.").

In addition to failing to comply with the inspection requirement, American Family argues Ms. Perea-Martinez failed to comply with a policy provision that requires Ms. Perea-Martinez to submit adequate documentation of her claim before American Family is required to cover the loss.  Docket No. 42 at 14.  Specifically, American Family maintains that Fire Loss's "failure to provide the supplemental engineering plans, documentation supporting 240 labor hours incurred, and other items needed to substantiate the increased scope – where American Family expressly requested specific records and documents be provided – violates Conditions – Section I, (5)(j)(2) of the Policy."  *Id.*  It is unclear whether American Family is arguing that it was not obligated to pay for framing repairs based on inadequate documentation or that American Family could deny all coverage based on the insufficient framing

documentation.  *See id.* at 13-14.  The undisputed facts are limited to Ms. Perea-
Martinez's failure to substantiate her claim for 240 hours of labor in the framing
supplement.  *See id.* at 7, ¶ 22.  Therefore, the Court does not understand American
Family's argument to be that it could deny all coverage under the policy based on the
documentation that Ms. Perea-Martinez submitted regarding the fire damage to the
frame of her property.  The Court has already found that American Family is entitled to
summary judgment on the portion of Fire Loss's breach of contract claim based on
framing repairs.  The Court will not consider American Family's argument that Ms.
Perea-Martinez failed to comply with American Family's request for further
documentation.

### 3.  HVAC Repairs

American Family argues that, even if the Court were to find that Ms. Perea-
Martinez performed her obligations under the policy, Fire Loss cannot prove that
American Family breached the contract.  *Id.* at 14.  American Family maintains that,
under the policy, it is only required to provide payments on amounts American Family
agrees are owed, absent a verdict or appraisal award.  *Id.* at 5, 14, ¶ 7 (citing Docket
No. 42-1 at 13 ("Loss will be payable 60 days after we receive your properly completed
proof of loss and: a. we reach agreement with you; b. there is an entry of a final
judgment; or c. there is a filing of an appraisal award with us.")).  American Family
asserts that Fire Loss "has no evidence American Family failed to pay amounts it
agreed to or that it was ever provided receipts indicating the insured incurred more than
the amounts paid."  *Id.* at 14.  Specifically, American Family argues that it "hired the
HVAC expert who installed the system to identify the reasonable and necessary scope

of repair and supplemented with the additional amounts owed for that scope based on pricing provided by another HVAC vendor." *Id.* at 15.

Fire Loss does not specifically respond to American Family's arguments about HVAC repairs. *See* Docket No. 51 at 6-9. Instead, Fire Loss responds that its "invoices are the cost for the repairs of the Property." Docket No. 51 at 8. It maintains that, "[a]t minimum, the discrepancy between [Fire Loss's] invoices and the estimates from the public adjuster and [American Family] creates a dispute in material fact regarding the cost of repairs which demands denial" of American Family's motion for summary judgment. *Id.*

The Court finds that the undisputed facts show that American Family is entitled to summary judgment on Fire Loss's claim for HVAC repairs. The undisputed facts show that American Family performed an initial inspection of the property with Fire Loss, created an estimate, and issued the actual cash value payment for the estimate. Docket No. 42 at 5-6, ¶ 12. Fire Loss did not create its own estimate and worked off American Family's bids and Xactimate estimates. *Id.* at 6, ¶ 13. American Family told Fire Loss that an agreed-upon repair scope and schedule were necessary before it would be required to make additional payments. *Id.*, ¶ 16. Instead of preparing its own estimate and negotiating an agreed-upon scope of repairs, Fire Loss submitted invoices for repair costs that it had already incurred. *Id.* at 6-7, ¶ 17. American Family hired the HVAC expert who installed Ms. Perea-Martinez's HVAC system, who determined that the HVAC system could be repaired and that Fire Loss's scope of work was unnecessary. *Id.* at 7, ¶ 19. Ms. Perea-Martinez hired a public adjuster, who agreed that Fire Loss's repairs were beyond the approved scope of repairs. *Id.* at 8, ¶ 28.

Finally, American Family has paid Ms. Perea-Martinez $146,920.95 in dwelling actual

cash value. *Id.*, ¶ 24. Thus, the undisputed facts show that American Family was not

required to pay Fire Loss's invoice for HVAC repairs because (1) the repairs were

unnecessary, and (2) the repairs were beyond the agreed-upon scope of repairs.

Moreover, it is undisputed that Ms. Perea-Martinez has been paid the actual cash value

of the repairs.

      Fire Loss fails to create a dispute of material fact that would preclude summary

judgment on this issue. Fire Loss responds only that its "invoices are the cost for the

repairs of the Property." Docket No. 51 at 8. However, there are no undisputed facts to

support this assertion. Instead, in its statement of additional undisputed facts, Fire Loss

asserts that American Family has not paid Ms. Perea-Martinez the policy limit, despite

Fire Loss submitting invoices for work that exceed the policy limit, and that Fire Loss

completed repairs at the property. *Id.* at 6, ¶¶ 1-3. American Family's motion for

summary judgment, however, is premised on the fact that Fire Loss's invoices are for

work that was unnecessary and not part of the approved scope of repairs. None of Fire

Loss's assertions of facts addresses why the repairs it made to the HVAC system were

necessary. Instead, the undisputed facts show that an HVAC expert found that the

repairs were not necessary. Fire Loss's assertions of facts also do not address why

Fire Loss could invoice American Family for work that was not part of the approved

scope of repairs. In fact, Fire Loss does not identify with particularity a single part of the

policy that American Family breached. Instead, it is an undisputed fact that the policy

states that the loss "will be payable 60 days after we receive your properly completed

proof of loss and (1) we reach agreement with you . . . ." *Id.* at 5, ¶ 7.

Finally, the Court rejects Fire Loss's argument that "the discrepancy between [Fire Loss's] invoices and the estimates from the public adjuster and [American Family] creates a dispute in material fact regarding the cost of repairs." Docket No. 51 at 8. Fire Loss cites a single invoice to support its claim for HVAC repairs. Docket No. 51-7. As discussed above, Fire Loss includes no facts, disputed or otherwise, regarding the contents of the invoice. *See* Docket No. 51 at 6. However, in the alternative, even if the Court considered the invoice, it does not support denying American Family's motion for summary judgment. The invoice indicates that the total "Invoice Amount" is $434,711.03. Docket No. 51-7 at 1. As part of this total, the invoice includes a line item for an "HVAC Supplement" in the amount of $35,765.10. *Id.* The invoice also indicates that American Family has made six payments on the claim, totaling $149,328.95. *Id.* The invoice provides no details as to what these payments covered. *See id.* Thus, the invoice provides no support for the proposition that American Family declined to pay the HVAC invoice. Moreover, the invoice provides no support for the proposition that the $35,765.10 of repairs were necessary or within the scope of repairs agreed to by the parties. For this additional reason, the Court finds that Fire Loss has failed to create a dispute of material fact regarding additional payments American Family allegedly owes for HVAC repairs. Therefore, the Court will grant summary judgment on the portion of Fire Loss's breach of contract claim seeking recovery for HVAC repairs.

### 4. Other Repairs

Finally, the Court considers whether Fire Loss's breach of contract claim includes a claim for damages based on unpaid invoices for repairs other than framing and HVAC repairs. The complaint alleges only that American Family "breached the Policy by failing to acknowledge the entire scope of necessary repairs" and by "failing to make

proper payments to Plaintiff pursuant to the terms of the Policy."  Docket No. 8 at 3,

¶ 22.  It does not allege what is included in the "scope of necessary repairs."  *Id.*

Moreover, Fire Loss, in response to American Family's motion seeking summary

judgment on all of Fire Loss's claims, does not cite facts, disputed or undisputed,

regarding repairs made by Fire Loss beyond framing and HVAC repairs.  *See* Docket

No. 42; Docket No. 51.  American Family's arguments focus on the framing and HVAC

repairs, *see* Docket No. 42, and Fire Loss's response appears to adopt this narrow view

of its breach of contract claim by making no argument that the claim includes recovery

for other repairs.  *See* Docket No. 51.  Nevertheless, Fire Loss includes as an exhibit an

invoice that appears to suggest that, as of May 16, 2023, Fire Loss invoiced American

Family based on the original estimate, an asbestos abatement supplement, a framing

supplement, a roofing supplement, a code supplement, an HVAC supplement, an

incurred items supplement, and a contents supplement.  *See* Docket No. 51-7 at 1.

Therefore, the Court will consider whether American Family is entitled to summary

judgment on a breach of contract claim based on American Family failing to pay Fire

Loss for these allegedly "necessary repairs."  Docket No. 8 at 3, ¶ 22.

The Court finds that American Family is entitled to summary judgment on the

whole of Fire Loss's breach of contract claim.  As discussed above, the undisputed facts

show that the parties agreed to an initial scope of repairs, that amendment to the scope

of repairs required the agreement of American Family, that Fire Loss completed repairs

outside the agreed to scope of repairs, that American Family hired experts who found

that Fire Loss's repairs were not necessary, and that the public adjuster agreed that Fire

Loss completed repairs outside the parties' agreed-upon scope of repairs.  *See* Docket

No. 42 at 5-8, ¶¶ 11-28.  Moreover, it is undisputed that American Family has paid Ms.
Perea-Martinez $146,920.95 in benefits for the actual cash value of Ms. Perea-
Martinez's property, and there are no facts to suggest that Ms. Perea-Martinez was
entitled to more than $146,920.95 in benefits.  *Id.* at 8, ¶ 24.

Fire Loss fails to create a dispute of material fact that American Family did not
pay Ms. Perea-Martinez the benefits she is owed under the policy.  First, Fire Loss does
not identify any portion of the policy that American Family violated, and the undisputed
facts indicate that American Family had to agree that the repairs were necessary before
payment is owed.  *See id.* at 5, ¶ 7.  Second, Fire Loss includes no evidence of what
repairs were made, why they were necessary, or why Fire Loss's invoice reflects the
actual price of such repairs.  For the reasons discussed above, the Court finds that a
single invoice, by itself, is insufficient to create a dispute of fact as to whether the
repairs identified in the invoice were necessary or covered by Ms. Perea-Martinez's
policy.  Therefore, the Court will grant summary judgment on Fire Loss's breach of
contract claim.

## B. Statutory Bad Faith

In the complaint, Fire Loss alleges that American Family violated Colo. Rev. Stat.
§ 10-3-1115 because it "delayed Plaintiff's Claim without a reasonable basis," "failed to
sufficiently prepare, educate, and oversee the actions of its adjusters and estimators,"
and "failed to reasonably adjust the Loss and make proper payments in good faith."  *Id.*
at 4, ¶¶ 28, 30-31.  To prevail on a claim for statutory bad faith delay or denial of
insurance benefits under Colo. Rev. Stat. § 10-3-1115(1)(a) a plaintiff must establish
that her insurer (1) denied or delayed payment of a claim for benefits owed and (2) the
denial or delay lacked a reasonable basis.  *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d

1181, 1186 (Colo. 2018). The parties' arguments focus on the second element. See
Docket No. 42; Docket No. 51. An insurer's delay is unreasonable "if the insurer
delayed or denied authorizing payment of a covered benefit without a reasonable basis
for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an
insurer has breached its duties to the insured is one of reasonableness under the
circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App.
2008). In other words, the question is whether a reasonable insurer under similar
circumstances would have denied or delayed payment of the claim. *Id.* In Colorado,
acting "without a reasonable basis" has been construed to mean pursuing a groundless
position that is not supported by credible evidence. *Cooper v. Shelter Gen. Ins. Co.*,
653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*,
No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)).

### 1. *Framing Repairs*

American Family argues that, because Ms. Perea-Martinez failed to comply with
the terms of her policy, she is not entitled to benefits beyond what she has already been
paid. Docket No. 42 at 16. Specifically, American Family maintains that Ms. Perea-
Martinez's failure to comply with the inspection requirement of the policy serves as a
reasonable basis for American Family to deny coverage for Fire Loss's framing repairs
to the property. *Id.* at 16-19 (it was not "unreasonable for American Family to dispute
portions of the claim, given the prejudice [Fire Loss] created by completing permanent
repairs before the reinspection").

Fire Loss does not respond to American Family's argument that it had a
reasonable basis to deny coverage for framing repairs because Fire Loss completed
permanent repairs before American Family could perform a second inspection of the

property.  *See* Docket No. 51 at 9-10.  Instead, Fire Loss asserts that there are disputes of fact as to whether it provided American Family with adequate documentation to support the framing repairs.  *Id.*

It is an undisputed fact that Fire Loss completed permanent repairs before American Family could inspect the property.  Docket No. 42 at 7, ¶ 21.  For the reasons discussed above, the Court finds Ms. Perea-Martinez's failure to comply with the inspection requirement of the policy bars Fire Loss's claim to coverage benefits for the framing repairs.  Thus, Fire Loss has not shown that there is a dispute of fact as to whether American Family lacked a reasonable basis for denying that portion of the claim.  An insurer does not need multiple reasonable bases to deny a claim.  *See* Colo. Rev. Stat. § 10-3-1115(2) ("an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without *a* reasonable basis for that action" (emphasis added)); *Foster v. State Farm Fire & Cas. Co.*, No. 22-cv-01221-PAB-JPO, 2024 WL 896757, at *5 (D. Colo. Mar. 1, 2024) ("Because Mr. Foster has failed to plausibly allege that State Farm acted without *any* reasonable basis, the Court will dismiss his statutory bad faith claim." (emphasis added)); *Dean v. Allstate Ins. Co.*, 878 F. Supp. 1397, 1403 (D. Colo. 1993) ("The test for bad faith denial is whether, under all the circumstances of the case, the facts show the absence of any reasonable basis for denying the claim."); *Bowers v. Buckeye State Mut. Ins. Co.*, No. 18-cv-00496-CMA-NRN, 2019 WL 141703, at *3 (D. Colo. Jan. 9, 2019) ("The Colorado Supreme Court has held that the relevant inquiry as to whether an insurer has breached its duties of good faith and fair dealing with its insured is whether the facts . . . show the absence of any reasonable basis for denying the claim, i.e., would a reasonable insurer under

the circumstances have denied or delayed payment of the claim under the facts and circumstances." (citation and quotation omitted)).  Therefore, the Court will not consider Fire Loss's arguments regarding the documentation it submitted to American Family to substantiate the framing supplement.  Because American Family's reliance on the inspection requirement was a reasonable basis to deny the claim, the Court will grant summary judgment on Fire Loss's bad faith claim based on refusal to pay for the framing repairs.

### 2.  All Other Repairs

American Family argues that the undisputed facts demonstrate that it had a reasonable basis to deny the remaining unpaid portions of Fire Loss's invoices because Fire Loss completed work outside the agreed-upon scope of repairs.  Docket No. 42 at 18 ("The need for an approved repair scope was communicated in writing" but Fire Loss "admits it decided not to negotiate an approved repair scope with American Family and admits it performed permanent repairs of unapproved supplemental amounts." (internal citations omitted)).  American Family argues that, "[r]ather than simply disagreeing with [Fire Loss], American Family reasonably adopted the portions of the supplements it found supported (often after input from hired consultants), issued the undisputed amounts, communicated the basis for its remaining disagreements and asked for documentation to substantiate amounts claimed, reinspected the property, and ultimately reached agreement on the remaining disputes with the public adjuster and insured."  *Id.* at 19 (internal citations omitted)).  Because American Family's argument applies equally to Fire Loss's claim for HVAC repairs and any other repairs American Family has denied coverage for, the Court will consider Fire Loss's claim for all other repairs collectively.

Fire Loss responds that American Family "admits that it is denying paying [Fire Loss] for the invoices it submitted to it for the work that it thought was beyond the scope it agreed to but has failed to provide a reasonable basis for this refusal."[27]  Docket No. 51 at 10.  It claims that American Family's "disregard and overt refusal to cover the costs associated with [Fire Loss] performing repairs at the Property is consistent throughout [American Family's motion for summary judgment]."  *Id.*  Fire Loss maintains that American Family argues that, because "it paid the benefits it agreed to, this represents that it did not act unreasonably."  *Id.*  Fire Loss maintains that "[t]hese are genuine disputes of material facts, therefore, [Fire Loss's] claim under C.R.S. 103-1115/1116 may not be decided as a matter of law and must be decided by the finder of fact at trial."  *Id.*

The Court finds that Fire Loss fails to show that American Family's lack of agreement is not a reasonable basis to deny the claim.  Instead, the undisputed facts show that American Family performed a preliminary inspection of the property with Fire

---

[27] The Court does not understand Fire Loss's argument to be that American Family, prior to litigation, failed to explain the basis for its denial.  Instead, the Court construes Fire Loss's argument to be that American Family's motion for summary judgment does not identify a reasonable basis for its denial.  The Court notes that the Tenth Circuits has held that, "[i]n determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) [under the Colorado Unfair Claims Practices Act] is prohibited and may be considered if the delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct."  *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1225 (10th Cir. 2016) (citing Colo. Rev. Stat. § 10-3-1104(1)(h)).  Section 10-3-1104(1)(h)(XIV) states that insurers must "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim."  Colo. Rev. Stat. § 10-3-1104(1)(h)(XIV).  However, Fire Loss's response does not mention § 10-3-1104(1)(h)(XIV).  Moreover, Fire Loss includes not facts, disputed or otherwise, regarding when American Family refused to pay Fire Loss's invoices or what explanation it gave.  Therefore, the Court will not consider the issue.

Loss to identify damages and create an initial scope of repairs.  Docket No. 42 at 5,

¶ 11.  American Family told Fire Loss that a final scope of repairs would be confirmed

after the abatement was complete, and that any changes in the scope of repairs

required American Family's approval.  *Id.* at 5-6, ¶¶ 11, 16.  The policy states that the

loss "will be payable 60 days after we receive your properly completed proof of loss and

(1) we reach agreement with you . . . ."  *Id.* at 5, ¶ 7.  Instead of performing work within

the agreed-upon scope of repairs, Fire Loss performed unapproved repairs and billed

American Family for the cost of these repairs.  *Id.* at 6-7, ¶ 17.  The undisputed facts

demonstrate that American Family had a reasonable basis to deny coverage for

unapproved repairs.

Furthermore, to the extent that Fire Loss argues that it was unreasonable for

American Family not to agree to Fire Loss's repairs, regardless of the fact that they

were not pre-approved, Fire Loss fails to create a dispute of fact that American Family's

denial was unreasonable.  The only facts presented by either party regarding the scope

of necessary repairs are that American Family's expert found that Fire Loss's HVAC

repairs were unnecessary and that the public adjustor agreed that Fire Loss performed

work beyond the agreed-upon scope of repairs.  *Id.* at 7-8, ¶¶ 19, 28.  These facts

support the proposition that American Family's denial was reasonable.  As discussed

above, Fire Loss includes no facts and cites no evidence that support the proposition

that the denied portions of Ms. Perea-Martinez's claim included necessary repairs that

were covered by the policy.  Therefore, the Court finds that there are no genuine issues

of material fact regarding American Family's denial of Fire Loss's claim to benefits for

HVAC repairs or any other denial that serves as the basis for Fire Loss's statutory bad

faith claim.[28]  Accordingly, the Court will grant American Family's motion for summary

judgment.[29]

## V.    CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 42] is

**GRANTED**.  It is further

**ORDERED** that plaintiff's first and second claims for relief are **DISMISSED with**

**prejudice**.  It is further

---

[28] Fire Loss's response repeatedly references the fact that American Family
attempted to resolve Ms. Perea-Martinez's insurance claim with her directly and did not
include Fire Loss in those discussions.  *See*, *e.g.*, Docket No. 51 at 8 ("However, had
[American Family] treated [Fire Loss] as if it were the insured, [American Family] would
have attempted to negotiate pre-litigation resolution with [Fire Loss] in addition.").  This
theory of liability does not appear in the complaint.  *See* Docket No. 8; *see also Purser
v. Gilliland*, No. 22-cv-02374-GPG-RTG, 2024 WL 5276679, at *12 (D. Colo. Nov. 21,
2024) ("New theories of liability are not appropriately raised for the first time in a
summary judgment response.").  Moreover, Fire Loss includes no undisputed facts
regarding its exclusion from settlement negotiations between American Family and Ms.
Perea-Martinez.  *See* Docket No. 51.  Finally, Fire Loss provides no support for the
proposition that, because Fire Loss was assigned Ms. Perea-Martinez's right to pursue
American Family for unpaid benefits, American Family had a duty under Colo. Rev.
Stat. § 10-3-1115(1)(a) to include Fire Loss in American Family's attempt to resolve the
insurance claim with Ms. Perea-Martinez.

[29] Fire Loss's response does not mention its allegation that American Family
"failed to sufficiently prepare, educate, and oversee the actions of its adjusters and
estimators."  Docket No. 8 at 4, ¶ 30; *see* Docket No. 51.  Fire Loss also includes no
facts regarding American Family's oversight of its adjusters and estimators.  *See* Docket
No. 51.  Finally, Fire Loss provides no support for the proposition that American
Family's oversight of its employees violated Colo. Rev. Stat. § 10-3-1115(1)(a).  *See id.*
Therefore, the Court finds that Fire Loss has abandoned this portion of its statutory bad
faith claim.  Even if Fire Loss has not abandoned the portion of its claim based on
American Family's oversight of its adjustors and estimators, American Family has
moved for summary judgment on the whole of Fire Loss's statutory bad faith claim, *see*
Docket No. 42 at 16, and Fire Loss has not shown that there is a dispute of fact
regarding whether American Family's oversight of its employees violated Colo. Rev.
Stat. § 10-3-1115(1)(a).

**ORDERED** that this case is closed.

DATED September 16, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge